**Virgil T. PACE, Plaintiff,**

v.

**UNITED STATES of America and Secretary of Health and Human Services, Defendants.**

**Civ. A. No. H–82–2720.**

United States District Court,
S.D. Texas,
Houston Division.

April 25, 1984.

Virgil Pace, pro se.

Frank Conforti, Asst. U.S. Atty., Houston, Tex., for defendants.

## ORDER

McDONALD, District Judge.

Came on to be heard Cross-Motions for Summary Judgment. Having considered the arguments of the parties and the applicable law, the Court is of the opinion that Plaintiff's Motion should be DENIED and that Defendant's Motion should be GRANTED.

### I. Statement of the Case

Plaintiff is an inmate at Wayne Unit, Huntsville, Texas, a Texas Department of Corrections facility. Plaintiff suffers from a heart condition and arthritis, and for a period of time therefore received Social Security disability payments. In October, 1980 the Secretary of Health and Human Services informed Plaintiff that because of the enactment of a new provision of the Social Security Act, § 423(f),[1] Plaintiff was no longer eligible for Social Security payments. Plaintiff is not enrolled in any court-approved rehabilitation program; in fact, no such program exists in the Texas prison system. Plaintiff challenged the cutoff on constitutional grounds first to the appropriate administrative body and now to this Court. Cross-motions for Summary Judgment have been filed in the case.

### II. Summary Judgment

Disposition of this case on summary judgment appears appropriate because no question of material fact is present in the case.

A litigant is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). *See Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir.1980); *Munoz v. International Alliance of Theatrical Stage Employees and Moving Picture Mach. Operators*, 563 F.2d 205, 207, n. 1 (5th Cir.1977); *Irwin v. United States*, 558 F.2d 249, 251 (5th Cir. 1977); *Central Oil & Supply Corp. v. United States*, 557 F.2d 511, 515 (5th Cir. 1977).

### III. Discussion

Plaintiff advances six grounds in support of his Motion. The Court will treat each claim individually.

A. *Ex Post Facto Law*—Plaintiff first challenges § 423 on the ground that it is an *ex post facto* law forbidden by the Constitution of the United States. *See* U.S. Const. Art. I, § 9, Cl. 3.

■ In order to be a forbidden *ex post facto* measure, a statute that is civil in nature on its face must effect a punishment. *Harisiades v. Shaughnessy*, 342 U.S. 580, 595, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952) ("The mark of an *ex post facto* law is the imposition of what can fairly be designated punishment for past acts"). In *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981), the Supreme Court emphasized that in order to determine whether a statute is an *ex post facto* law, a court must decide if that statute

"imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Cummings v. Missouri*, 4 Wall. 277, 325–326, 18 L.Ed. 356 (1867). "The *ex post facto* prohibition, which forbids the imposition of punishment more severe than the pun-

---

1. This provision states in pertinent part that:
*Suspension of benefits for inmates of penal institutions*
(f)(1) Notwithstanding any other provision of this subchapter, no monthly benefits shall be paid under this section, or under section 402(d) of this title by reason of being under a disability, to any individual for any month during which such individual is confined in a jail, prison, other penal institution or correctional facility, pursuant to his conviction of an offense which constituted a felony under applicable law, unless such individual is actively and satisfactorily participating in a rehabilitation program which has been specifically approved for such individual by a court of law and, as determined by the Secretary, is expected to result in such individual being able to engage in substantial gainful activity upon release and within a reasonable time.
42 U.S.C. § 4273(f)(1).

ishment assigned by law when the act to be punished occurred. Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated.

*Id.* at 30, 101 S.Ct. at 965.

■ The denial of Social Security benefits to Plaintiff and other prisoners cannot be considered punishment under current law. The Supreme Court determined in *Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960) that the denial of Social Security benefits is not punishment, but "mere denial of a noncontractual governmental benefit." The *Flemming* court addressed a challenge to a law denying Social Security benefits to a deportee on the grounds that the law was *ex post facto* and constituted a bill of attainder. Justice Harlan's majority opinion explained that "it cannot be said ... that the disqualification of certain deportees from social security benefits while they are not lawfully in this country bears no rational connection to the purposes of the legislation of which it is a part, and must without more therefore be taken as evidencing a congressional desire to punish." *Id.* at 617, 80 S.Ct. at 1376. *Flemming* governs the

situation at hand. The 1980 amendment to the Social Security Act that added § 423(f) bears a rational connection to purposes besides punishment. The legislative history of the section indicates that its purpose was twofold: to avoid paying persons whose basic needs were met by prison systems,[2] and to avoid discipline problems which the money created in prisons.[3] There are some indications in the congressional debates regarding § 423(f) that it was intended as a punitive measure.[4] However, the "rational connection" to nonpunitive ends remains as a rationale for enacting this provision, and this Court "cannot with confidence reject all those alternatives which imaginativeness can bring to mind, save that one which might require the invalidation of the statute." 363 U.S. at 621, 80 S.Ct. at 1378.

The case cited in this regard by Plaintiff, *Hiss v. Hampton*, 338 F.Supp. 1141 (D.D.C. 1972), is distinguishable. The *Hiss* Court held that a statute denying pension benefits to prisoners convicted of making false statements regarding their membership in the Communist Party was an *ex post facto* law. The Court clearly predicated that decision on a finding that Alger Hiss was the specific target of the legislation in question. *Id.* at 1149 ("There is substantial

---

**2.** The committee believes that the basic purpose of the social security program are not served by the unrestricted payment of benefits to individuals who are in prison or whose eligibility arises from the commission of a crime. The disability program exists to provide a continuing source of monthly income to those whose earnings are cut off because they have suffered a severe disability. The need for this continuing source of income is clearly absent in the case of an individual who is being maintained at public expense in prison. The basis for his lack of other income in such circumstances must be considered to be marginally related to his impairment at best.

**3.** *See* Receipt of Social Security Benefits by Persons Incarcerated in Penal Institutions, Hearings Before Subcomm. on Soc. Security of House Comm. on Ways and Means, 96th Cong., 2nd Sess. (June 20, 1980) [hereinafter, "Hearing"]. The committee was presented with evidence that cash payments to prisoners were creating discipline problems within some pris-

ons because the money was being used by some prisoners to deal in illicit commodities or was being "strong armed" by other inmates. Hearings at 25, 64, 68, 75.

**4.** *See, e.g.,* the remarks of Rep. Whitehurst:

And, like you, Mr. Chairman, I, too, agree that it is ridiculous for someone like David R. Berkowitz, New York City's 'Son of Sam' mass murderer, to be allowed to collect several hundred dollars each month because of some asinine qualification procedure. For what possible reason can there be in paying an animal like this from our country's already strained social security fund? What must the families of this creature's victims think. Have our laws become so inflexible that our social security administrators must bend over backwards to make sure that another parasite is added to suck the life out of the social security host?
*Receipt of Social Security Benefits by Prisoners, Hearings Before the Subcomm. on Soc. Security of the House Ways and Means Comm.,* 96th Cong., 2nd Sess. 8 (1980).

evidence in the objective manifestations of congressional purpose that the primary target of the Act was Alger Hiss and not general regulation of the federal service"). Plaintiff has not shown that such an individually-directed, punitive intent underlay the enactment of § 423(f).

■ B. *Bill of Attainder* —Plaintiff next argues that the law in question is a bill of attainder, another type of statute prohibited by the Constitution. *See* Art. I, § 9, Cl. 3 U.S. Const. Bills of attainder are "legislative acts, no matter what their form, that apply either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial." *United States v. Lovett*, 328 U.S. 303, 315–16, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252 (1946). A two-part test governs the question of whether a law is a bill of attainder; the law must be both a specific designation of persons or groups as subjects of the legislation, and ... a legislatively mandated deprivation of an existing right." *Nixon v. Administrator of General Servs.*, 433 U.S. 425, 538–39, 97 S.Ct. 2777, 2838–2839, 53 L.Ed.2d 867 (1977). Again, the focus must be on whether the allegedly unconstitutional statute inflicts punishment. *Id.* at 472, 97 S.Ct. at 2805.

Given this legal background, it is apparent that Plaintiff's contention must fail. The questioned section of the Social Security Act does not punish; *see* discussion of *Flemming, supra.* Even if deprivation of Social Security payments were punishment, the law does not single out an identifiable group of individuals to be punished. That the section applies to a group, *viz.*, prisoners, does not satisfy *Nixon's* "special designation" requirement. The Bill of Attainder Clause is not a substitute for the Equal Protection Guarantee of the Constitution.

> By arguing that an individual or defined group is attained whenever he or it is compelled to bear burdens which the individual or group dislikes, appellant removes the anchor that ties the bill of attainder to realistic conceptions of classification and punishment. His view

would cripple the very process of legislating, for any individual or group that is made the subject of adverse legislation can complain that the law makers could and should have defined the relevant affected class at a greater level of generality. Furthermore, every person or group made subject to legislation which he or it finds burdensome may subjectively feel, and can complain, that he or it is being subjected to unwarranted punishment.... However expansive the prohibition against bills of attainder it surely was not intended to serve as a variant of the equal protection doctrine, invalidating every Act of Congress or the States that legislatively burden some persons or groups but not all other plausible individuals. In short, while the Bill of Attainder Clause serves as an important "bullwark against tyranny".... It does not do so by limiting Congress to the choice of legislating only benefits, or not legislating at all.

433 U.S. 470–71, 97 S.Ct. at 2804–2805.

■ C. *Cruel and unusual punishment* —The Plaintiff next argues that § 423(f) violates the ban on "cruel and unusual punishment" of the Eighth Amendment to the Constitution. Having determined that denial of Social Security benefits is not punishment for purposes of Art. I, § 9, cl. 3, *see* discussion of *Flemming v. Nestor, supra,* the Court cannot now say that the nature of denying Social Security benefits is different in relation to the Eighth Amendment. Thus because denying those benefits does not constitute punishment, this Court finds no merit in Plaintiff's claim.

D. *Due process and Equal Protection* —Plaintiff issues challenges on both due process and equal protection grounds. The standard governing the two is the same:

> A statutory classification in the area of social welfare is consistent with the Equal Protection Clause of the Fourteenth Amendment if it is "rationally based and free from invidious discrimination." *Dandridge v. Williams*, 397 U.S. 471, 487 [90 S.Ct. 1153, 1162, 25 L.Ed.2d

491].... [A] classification that meets the test articulated in *Dandridge* is perforce consistent with the due process requirement of the Fifth Amendment. *C.f.* *Bolling v. Sharpe,* 347 U.S. 497, 499 [74 S.Ct. 693, 694, 98 L.Ed. 884].

*Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 257, 30 L.Ed.2d 231 (1971).

 The statute at hand appears to be rationally based; *see* discussion of the purposes behind the section, *supra.* The Plaintiff argues that the section cannot be rationally related to a legitimate goal, reasoning that because of the disability which qualifies him for Social Security benefits and because Texas prisons do not pay for work, he cannot earn money to purchase necessities the prison does not furnish. However, in proving that a statute is rational, the logic of Congress need not be perfect. It is sufficient here that Congress articulated some sensible reasons for passing the law in question. Moreover, Plaintiff has not demonstrated that invidious discrimination motivated Congress in enacting § 423(f). The only cases in which provisions regarding Social Security have been invalidated have involved protected groups of which Plaintiff is not a part. *See Califano v. Goldfarb,* 430 U.S. 199, 97 S.Ct. 1021, 51 L.Ed.2d 270 (1977) (gender discrimination); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975) (gender discrimination); *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974) (discrimination against illegitimate children).

E. *No court-approved rehabilitation programs*—Plaintiff's final challenge to § 423(f) rests on the Fifth, Eighth, and Fourteenth Amendments to the Constitution. Specifically, Plaintiff claims that he cannot participate in a court-approved rehabilitation program, and that persons such as the disabled and aged who also receive Social Security benefits need not take part in rehabilitation in order to be eligible for those benefits. This argument also must fail. Congressional approval of a bill that is under-inclusive in scope does not invalidate that law, 363 U.S. at 620–21. In addi-

tion, Plaintiff again does not demonstrate discrimination that is of a type recognized by the Supreme Court as creating Constitutional infirmities in legislation regarding benefits. *See* discussion of Due Process and Equal Protection claims, *supra.*

Accordingly, it is ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's is GRANTED.